## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONTE M. MCCOY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 26-CV-0217 |
| | : | |
| AMPLER QSR LLC, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

**SCOTT, J.**                                                                    **JULY 1 , 2026**

*Pro se* Plaintiff Monte M. McCoy brings this civil action pursuant to 42 U.S.C. § 1983, alleging violation of his Fourteenth Amendment due process rights and a civil conspiracy. He also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant McCoy leave to proceed *in forma pauperis* and dismiss his Complaint with prejudice.

## I.      FACTUAL ALLEGATIONS[1]

McCoy names as Defendants: (1) Ampler QSR LLC ("Ampler"); (2) Travis Diffin, Director of Operations for Ampler; (3) Janelle Oxley, District Manager for Ampler; (4) Brittany Gonzales, Human Resources employee at Ampler; (5) Insurance Company of the West ("ICW"); (6) ICW investigator Alex Tinnyo; (7) Patrick Kenny, McCoy's worker's compensation attorney; (8) the Doylestown Police Department ("DPD"); and (9) Detective William Mokristi of the DPD. (Compl. ¶¶ 5-13.)

---

[1] The facts set forth in this Memorandum are taken from McCoy's Complaint and attached Exhibits (ECF Nos. 2, 2-1). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed.

The factual allegations in McCoy's Complaint are sparse.  The Court therefore gleans many of the relevant facts from the excerpts of a DPD incident report dated July 4, 2024, which McCoy attached as an exhibit.[2]  McCoy was hired by Burger King in December 2021 as an assistant manager in their North Wales, Pennsylvania restaurant.  (ECF No. 2-1 at 3.)  On March 3, 2024, McCoy reported suffering a work-related injury, was placed on full restrictions, and began receiving worker's compensation payments starting on April 2, 2024.  (*Id*.)  ICW, the insurance provider for Ampler, conducted surveillance on McCoy from April 3, 2024, to May 8, 2024, and determined based on his physical activities that he was misrepresenting his injuries and restrictions.  (*Id*. at 3, 6.)  On April 22, 2024, an independent medical examination was conducted on McCoy by a physician, who determined that McCoy was capable of returning to work without restrictions and that he did not require any additional evaluation or treatment.  (*Id*. at 6.)  McCoy's worker's compensation payments were terminated on April 29, 2024.  (*Id*. at 3.)

On or about July 4, 2024, another Burger King restaurant in Doylestown[3] reported the theft of $2254 in cash and McCoy was named as a suspect.  (*Id*. at 1.)  He was later charged with burglary and other crimes in *Commonwealth v. McCoy*, CP-09-CR-0000688-2025 (C.P. Bucks), which remains an active case in the Bucks County Court of Common Pleas.  As part of the DPD's investigation, Detective Mokristi communicated with various Ampler and ICW employees to discuss McCoy's employment history with Burger King and ultimately obtained

---

[2] McCoy only attaches pages 2, 35-38, and 41 of what appears to be a lengthy incident report.

[3] McCoy states that Defendant Ampler "is a private corporate entity operating restaurants in Pennsylvania."  (Compl. ¶ 5.)  He does not specify Ampler's relationship to the two Burger King restaurants referenced in the Complaint and Exhibits.  The Ampler website lists the Doylestown Burger King at 560 Main Street, where the burglary allegedly occurred, as one of the restaurants operated by Ampler, but does not list the North Wales restaurant.  *See* https://ampler.com/about/ (last viewed: March 23, 2026.)

surveillance video and documents related to the investigation of McCoy's suspected insurance fraud.  (*See generally* ECF No. 2-1.)

In the narrative of his Complaint, McCoy alleges that Mokristi disclosed the existence of the criminal investigation to Ampler and ICW "without legal necessity, subpoena, court order, or legitimate investigatory purpose" and with the intent of undermining his worker's compensation claim.  (Compl. ¶ 17.)  He asserts that "[f]ollowing Detective Mokristi's intervention, Ampler QSR, LLC and ICW altered their conduct" including "coordinating strategy with law enforcement [and] treating Plaintiff's claim [as] adversarial due to criminal allegations rather than medical and legal merit[.]"  (Compl. ¶ 19.)  McCoy alleges that his workers compensation attorney, Defendant Kenny, "altered [his] legal advice and strategy" in response to the disclosure of the criminal investigation, "including recommending settlement under coercive conditions created by law enforcement rather than based on the merits of the claim."  (*Id*. ¶ 22.)  McCoy contends that Mokristi "used the authority of his office to exert pressure in a civil insurance matter, a purpose wholly unrelated to legitimate criminal investigation, constituting an abuse of power."  (*Id*. ¶ 24.)  McCoy ultimately entered into a "C&R"[4] on an unspecified date, resolving his worker's compensation claim.  (*Id*. at 5.)

McCoy asserts that all Defendants violated his Fourteenth Amendment due process rights based on the alleged interference with his worker's compensation claim.  (*Id*. ¶¶ 26-30.)  He also claims that all Defendants engaged in a conspiracy to violate his Fourteenth Amendment rights, as evidenced by "coordinated timing, parallel conduct, and mutual benefit."  (*Id*. ¶ 31.)  He alleges that "[e]ach defendant knew the essential nature of the plan and voluntarily

---

[4] The Court presumes that McCoy is referring to a compromise and release, i.e. a negotiated settlement providing a one-time lump sum payment in exchange for resolution of a worker's compensation claim.

participated[,]" and that "[p]rivate actors became state actors by willfully joining law enforcement's coercive scheme." (*Id.* ¶¶ 32-33.) McCoy seeks compensatory and punitive damages, declaratory relief, injunctive relief, and attorney's fees. (*Id.* at 6.)

## II.    STANDARD OF REVIEW

The Court will grant McCoy leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because McCoy is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting

4

*Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Mala*, 704 F.3d at 245 (citations omitted); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Township of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

### A.   Claims Against Ampler, ICW, and their Employees

McCoy names as Defendants two private companies and their employees, asserting they are state actors based on their "joint action" or coordination with law enforcement.  (Compl. ¶¶ 5-10.)  Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotation marks and citation omitted).  "To answer that question, [the United States Court of Appeals for the Third Circuit

has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (cleaned up).

"Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (citations omitted). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

"A private party 'who corruptly conspire[s]' with a state official will be considered a state actor under § 1983." *Kitko v. Young*, 575 F. App'x 21, 26 (3d Cir. 2014) (*per curiam*) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175-76 (3d Cir. 2010))). However, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co.*, 615 F.3d at 178 (citations omitted). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.

McCoy contends in a conclusory manner that that each of the private defendants engaged in joint action with law enforcement but does not allege any facts describing the conduct that purportedly constituted joint action.[5] The DPD incident report only reflects that some of the

---

[5] For example, he alleges that Diffin "acted in concert with law enforcement and insurance investigators"; ICW "engaged in joint investigatory action with Police"; and Tinnyo

Ampler and ICW Defendants responded to questions and a subpoena from Mokristi.  (ECF No. 2-1 at 11-15.)  Merely cooperating or communicating with law enforcement does not transform a private actor into a state actor.  *See Timoney v. Loughery*, No. 14-4774, 2015 WL 4093919, at *3 (E.D. Pa. July 7, 2015) ("[B]y merely communicating with or furnishing information to law enforcement officials, a private party does not become a state actor for § 1983 purposes." (citations omitted)), *aff'd*, 670 F. App'x 47 (3d Cir. 2016); *see Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) ("Communications between a private actor and a state actor, without facts supporting effort or plan between the parties, are insufficient to make the private party into a state actor." (citation omitted)); *see also Stephens v. Kenney*, 802 F. App'x 715, 720 (3d Cir. 2020) (*per curiam*) (dismissing claims against two private individuals where plaintiff "failed to allege plausible facts sufficient to support a claim of joint activity [between the private actors and government actors]" (citation omitted)).

McCoy's statements asserting a conspiracy between the private defendants and law enforcement are similarly conclusory.  He states that the existence of the conspiracy is "evidenced by coordinated timing, parallel conduct, and mutual benefit[,]" that "[e]ach defendant knew the essential nature of the plan and voluntarily participated[,]"and that "[p]rivate actors became state actors by willfully joining law enforcement's coercive scheme" (Compl. ¶¶ 31-33). However, merely asserting the existence of a conspiracy without alleging facts in support is insufficient to state a claim.  *See Great W. Mining & Mineral Co.*, 615 F.3d at 178 (refusing to consider the plaintiff's conclusory allegations that there was a "corrupt conspiracy," "an agreement," or "an understanding in place," between the private-party defendants and state

---

"acted under color of state law by directing, influencing, and collaborating with Police investigations."  (Compl. ¶¶ 5-10.)

actors); *see also Twombly*, 550 U.S. at 556.  Without more, Ampler, ICW, and their employees are not state actors subject to suit under § 1983 and will be dismissed from this action.

> **B.  Claims Against McCoy's Attorney**

McCoy also names as a Defendant Patrick Kenny, his worker's compensation attorney. "A lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."  *Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981) (footnote omitted).  McCoy asserts that Kenny became a state actor by "directing, influencing, collaborating with ICW [and] its investigators [and] lawyers, and with the Police investigation." (Compl. ¶ 11).  He does not, however, allege any facts beyond these vague statements indicating that Kenny engaged in joint action with the DPD.[6]  *See Garcia v. Wind Creek Bethlehem, LLC*, No. 22-292, 2022 WL 4130754, at *15 (E.D. Pa. Sept. 12, 2022) ("[Plaintiff's] mere conclusory allegations of joint action and of conspiracy are not entitled to the presumption of truth and are insufficient to render Jenkins and/or John Doe Security Officers state actors." (citation omitted)).  McCoy asserts that in response to the disclosure of DPD's criminal investigation, Kenny "altered legal advice and strategy, including recommending settlement under coercive conditions created by law enforcement interference rather than based on the merits of the claim." (Compl. ¶ 22.).  However, this amounts to an allegation that Kenny engaged in the regular duties of an attorney representing a client, not that he was a co-conspirator with a state actor.  Because McCoy's fails to allege plausibly that Kenny engaged in joint action with state actors, he is not subject to suit under § 1983 and will be dismissed from this action.

> **C.  Claims Against Detective Mokristi**

---

[6] Even if true, the claim that Kenny directed, influenced, or collaborated with ICW, another private defendant, would be insufficient to allege state action.

McCoy asserts claims against Detective Mokristi of the DPD, alleging he violated McCoy's due process rights under the Fourteenth Amendment and engaged in a civil conspiracy with the other Defendants to violate McCoy's rights.  (Compl. at 4.)  For reasons discussed below, neither claim is plausible.

### 1.   Civil Conspiracy

As discussed above, McCoy provides no facts in support of his conclusory allegations of a conspiracy among the Defendants, alleging only the bare elements of a conspiracy claim (*i.e.*, "coordinated timing, parallel conduct, and mutual benefit[,]" a "meeting of the minds" and that "[e]ach defendant knew the essential nature of the plan"), which is insufficient to meet the pleading standard.  *See Twombly*, 550 U.S. at 556 ("[A] bare assertion of conspiracy will not suffice.").  Moreover, other than McCoy's speculation, there are no facts suggesting Mokristi had any intent to interfere with his worker's compensation claim.  Without more, his civil conspiracy claim against Mokristi is not plausible.  *See Great W. Mining & Mineral Co.*, 615 F.3d at 178.

### 2.   Due Process

McCoy's asserts both substantive and procedural due process claims arising from the handling of his worker's compensation claim.  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

#### a.   Procedural Due Process

To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures

9

available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  Turning to the first step of the procedural due process analysis, McCoy asserts that he had a "property interest in his pending Pennsylvania Worker's Compensation claim." (Compl. ¶ 14.)  However, because McCoy asserts that his claim was *pending*, he fails to allege an entitlement to those benefits under Pennsylvania law that would give rise to a due process claim.  *See Sullivan*, 526 U.S. at 61 (holding that under Pennsylvania law, claimants do not have a property interest in worker's compensation funds until their requested medical care has been found "reasonable and necessary"); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (noting that whether a person has a property interest is traditionally a question of state law);[7] *see also Miller v. W.C.A.B. (Pavex, Inc.)*, 918 A.2d 809, 813 (Pa. Commw. Ct. 2007) (dismissing claimant's appeal from the denial of his worker's compensation claim on due process grounds because he had "not yet established that the treatment provided" by his physician "was necessary and reasonable[,]" and therefore the worker's compensation benefits "do not constitute property for purposes of his due process claim.").

Even assuming that McCoy alleged a property interest in his worker's compensation claim, he fails to plausibly allege that he was denied due process related to the claim.  He does not allege what procedures were or were not afforded to him in the adjudication of his worker's compensation claim.  His due process claim appears premised on the allegation that Mokristi

---

[7] McCoy does not allege that any medical provider had deemed his requested medical treatment reasonable and necessary or that his claim was otherwise approved.  Rather, the DPD incident report indicates that as of mid-April 2024, ICW had concluded he was misrepresenting his injuries, on April 22, 2024, an independent medical examination determined McCoy required no further evaluation or medical treatment, and his temporary worker's compensation payments were terminated on April 29, 2024.  (ECF No. 2-1 at 3, 6.)

10

caused him to settle the worker's compensation claim under "duress" and "coercion" by disclosing the existence of the burglary investigation to Ampler and ICW.  (Compl. ¶¶ 14-15, 22.)  But McCoy does not allege that any party engaged in intimidation, pressure, or threats that would rise to the level of duress or coercion.  *See Strickland v. Univ. of Scranton*, 700 A.2d 979, 986 (Pa. Super. Ct. 1997) (defining duress as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness" (citation omitted)).  The mere allegation that Ampler and ICW learned adverse information about McCoy from Mokristi is insufficient by itself to allege a violation of his due process rights.

### b.    Substantive Due Process

McCoy's substantive due process claim is likewise not plausible.  To be plausible, this type of due process claim must allege governmental conduct that "'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'"  *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); then citing *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)).  The Court is not aware of any authority holding that entitlement to worker's compensation, which is provided by statute in Pennsylvania, is a fundamental right under the Constitution.  *See Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 830 (E.D. Pa. 1998) (explaining that "only fundamental property interests [such as ownership or a lease] are worthy of substantive due process protection" (quoting *Indep. Enter., Inc. v. Pittsburgh Water & Sewer Auth.,* 103 F.3d 1165, 1179 (3d Cir. 1997))), *aff'd*, 165 F.3d 242 (3d Cir. 1999).  And McCoy's assertion that Mokristi communicated with ICW and Ampler employees about the DPD's criminal investigation, a seemingly routine activity for a police detective, falls far short of alleging conscience-shocking behavior.  For these reasons,

McCoy's procedural and substantive due process claims against Mokristi are not plausible and will be dismissed.

### D.    Claims Against DPD

Finally, McCoy names as a Defendant the DPD.  Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions,  *see e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.  *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability" (citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988))); *Hadesty v. Rush Twp. Police Dep't*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016).  Therefore, the Doylestown Police Department is not a proper defendant in this case under Section 1983 and is dismissed.[8]

### IV.    CONCLUSION

---

[8] Even if McCoy had named the City of Doylestown as a Defendant, his municipal liability claim would not be plausible because he fails to allege an underlying violation of his rights by a City employee.  *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").  He has also failed to allege the existence of a municipal policy or custom at issue in this case.  *See Monell*, 436 U.S. at 694.

For the foregoing reasons, the Court will grant McCoy leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) for failure to state a claim.  Because McCoy fails to identify any basis for a constitutional claim against the Defendants, the Court finds that amendment would be futile and will dismiss the Complaint with prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile").  An appropriate Order follows, dismissing this case.

**BY THE COURT:**

*/S/ Kai N. Scott*

**KAI N. SCOTT, J.**